IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DANIEL CRUMPLER, : | |
| : | |
| Plaintiff, : | |
| v. : | |
| : | CASE NO: 7:24-CV-49 (WLS) |
| WESTLAKE SERVICES HOLDING : | |
| COMPANY, : | |
| : | |
| Defendant. : | |
| _____ : | |

**ORDER**

Before the Court is Defendant Westlake Services Holding Company's ("Defendant Westlake") Motion to Enforce Settlement Agreement (Doc. 18) ("the Motion"). For the reasons discussed herein, that Motion is **GRANTED-IN-PART**.

**I.   RELEVANT BACKGROUND**

Plaintiff, proceeding pro se, commenced the above-captioned action on February 29, 2024, by filing a lawsuit in Tift County Magistrate Court. (*See generally* Doc. 1-2). Plaintiff, a former employee of Defendant Westlake, sued to recover money from an Employee Stock Purchase Plan ("ESPP") which he asserted was improperly withheld when he requested payment. (Doc. 1-2 ¶¶ 2–5, 8). The action was removed to this Court on May 13, 2024. Defendant Westlake filed an Answer (Doc. 6) on May 20, 2024.

The Court held an Initial Discovery Conference on July 30, 2024. (Doc. 11). At the Conference, the Parties advised the Court that they were in the midst of settlement negotiations. (Doc. 12 at 1). Based on these representations, the Court suspended discovery for thirty days in order for the Parties to have adequate time to pursue conclusion of settlement, if they wished to. (*Id.*) In a memorializing Order (Doc. 12), the Court ordered the Parties to file a notice on the docket no later than September 3, 2024, indicating whether a settlement had been reached. (*Id.*) By September 9, 2024, the Parties had not filed a notice on the docket regarding the status of settlement. The Court therefore issued an Order (Doc. 15)

for the Parties to file a notice in compliance with the Court's memorializing Order no later than September 16, 2024.

On September 16, 2024, Defendant Westlake filed the instant Motion to Enforce Settlement (Doc. 18). After reviewing the Motion, the Court ordered Plaintiff to respond, and determined that a hearing was necessary to resolve the Motion. (Doc. 19). Plaintiff filed a Response (Doc. 26) on October 23, 2024.

The Court held a hearing on the Motion to Enforce Settlement on December 3, 2024. Then-Defendant Principal Life Insurance Company ("Principal Life") made an oral motion to dismiss itself as a party at the hearing, which the Court granted from the bench and memorialized in a subsequent Order. (*See* Doc. 38 at 1).

After the hearing, the Court entered an Order (Doc. 38) for Plaintiff and Defendant Westlake to submit supplemental briefs addressing two scenarios no later than December 27, 2024. Defendant Westlake timely submitted a brief on December 26, 2024. Plaintiff submitted his supplemental brief, late, on January 7, 2025.[1] The Motion is now fully briefed and ripe for ruling.

## II.    LEGAL STANDARD

At the outset, Defendant Westlake misconstrues the legal standard the Court should adopt in reviewing the Motion to Enforce Settlement Agreement. Specifically, Defendant Westlake relies on a line of federal district court cases which adopts a summary-judgment-like standard, drawn from Georgia state law, to evaluate motions to enforce settlement in Georgia cases, but the reality is more nuanced—with significant implications for the Court's resolution of the instant Motion. *See e.g.*, *Owners Ins. v. Great Am. Lawn, LLC*, No. 1:23-CV-2461, 2024 WL 1159256, at *1 (N.D. Ga. Mar. 18, 2024) ("Under Georgia law, a motion to enforce a settlement agreement is evaluated under the standards similar to a motion for summary judgment." (quoting *Cohen v. DeKalb Cnty. Sch. Dist.*, No. 1:09-cv-1153, 2009 WL 4261161, at *4 (N.D. Ga. Dec. 1, 2022))). Although Georgia substantive law controls on a motion to enforce a settlement agreement, *e.g.*, *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987), as a matter of federal procedural law, the Court may resolve factual disputes on a motion

---

[1] Because Defendant Westlake has not objected to the timeliness of Plaintiff's supplemental brief, the Court finds it proper to consider for purposes of the instant motion.

2

to enforce settlement agreement—unlike a motion for summary judgment. *See Ford v. Citizens & S. Nat. Bank*, 928 F.2d 1118, 1122 (11th Cir. 1991).

A district court may properly resolve factual disputes because a motion to enforce a settlement agreement is, essentially, "an action to specifically enforce a contract." *Ford*, 928 F.2d at 1121 (quoting *Hensley v. E.R. Carpenter Co.*, 633 F.2d 1106, 1110 n.5 (5th Cir. Unit A 1980)). Because specific performance is an equitable remedy, there is no absolute right to a jury trial to resolve disputed factual issues—even if the party resisting specific enforcement disputes the formation of the contract. *Id.* (quoting *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709–10 (9th Cir. 1989) and *Hensley*, 633 F.2d at 1110 n.5).[2] Thus, a federal district court has the "inherent power to summarily enforce settlement agreements entered into by parties" in an action before it. *Ford*, 928 F.2d at 1121 (quoting *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967)). Even so, "'where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute,' . . . the parties must be allowed an evidentiary hearing." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (citation omitted) (quoting *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). Once a district court has held such a hearing, it may properly resolve factual issues. *Ford*, 928 F.2d at 1121 (citing *Cia Anon*, 374 F.2d at 36).[3]

Here, from the original briefing (Docs. 18 & 26), there are clearly disputed factual issues. The Court held an evidentiary hearing as a result which afforded both Parties the

---

[2] For this reason, Plaintiff has no absolute "right to a trial by jury of his pleadings." (*Contra* Doc. 40 at 3).

[3] As such, the Court is unpersuaded by Defendant Westlake's proffered cases from the Northern District of Georgia which adopt the summary-judgment-like standard employed by Georgia state courts. *See e.g.*, *Great Am. Lawn*, 2024 WL 1159256, at *1 (quoting *Cohen*, 2009 WL 4261161, at *4). Eleventh Circuit authority is clear that a federal district court may resolve factual issues on a motion to enforce a settlement agreement—even when applying Georgia state law to the formation and construction of a purported agreement. *See Ford*, 928 F.2d at 1121 ("Even though the 'substantive dimension' of a claim brought in federal court may be governed by state law, 'the right to a jury trial in federal courts is to be determined as a matter of federal law." (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam))). Indeed, another recent Northern District of Georgia court found it proper to resolve factual disputes on a motion to enforce a settlement agreement—even though Georgia substantive law applied to the agreement. *See Wash. v. Int'l Follies, Inc.*, No. 1:18-CV-03951, at *2–8 (N.D. Ga. May 20, 2022) (citing *Ford*, 928 F.2d at 1121)). The Court thus can and will resolve factual issues—particularly because it has afforded the Parties an evidentiary hearing.

opportunity to complete the Record to their satisfaction. At the hearing, Plaintiff gave sworn testimony in opposition to Defendant Westlake's Motion. *See* Motion to Enforce Settlement Hr'g Recording at 2:39–3:11, *Crumpler v. Westlake Servs. Holding Co.*, No. 7:24-cv-00049 (M.D. Ga. Dec. 3, 2024), (Doc. 37) ("Hr'g Recording"). Because the Court has allowed the Parties an evidentiary hearing, it may properly resolve factual conflicts in ruling on the instant Motion. *See Ford*, 928 F.2d at 1121 (citing *Cia Anon*, 374 F.2d at 36).[4] As such, the findings of fact discussed below are drawn from the affidavits and documents attached to Defendant Westlake's Motion (Docs. 18-1, 18-2, 18-3, & 18-4); the Affidavit of Sara Bates (Doc. 9 at 6–8);[5] and Plaintiff's sworn testimony at the hearing.

### III. DISCUSSION

Defendant Westlake's Motion for Settlement Agreement raises two key issues. First, whether Defendant Westlake and Plaintiff, in fact, made an enforceable settlement agreement and, if so, what were the agreed-upon essential terms? Second, because the Court finds an enforceable agreement, what should the remedy be to enforce that agreement?

#### A.  Formation

As a matter of substantive law, when evaluating the existence, construction or enforcement of a settlement agreement, a district court applies the contract law of the forum state. *See Schwartz*, 807 F.2d at 905 ("A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." (citing *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (applying Georgia state law in evaluating whether a settlement agreement was formed). Applying Georgia law, a settlement agreement "must meet the same requirements of formation and enforceability as other contracts." *DeRossett Enters., Inc. v. Gen. Elec. Capital Corp.*, 621 S.E.2d 755, 756 (Ga. Ct. App. 2005) (quoting *Greenwald v. Kersh*, 621 S.E.2d 465, 467 (Ga. Ct. App. 2005)). A binding agreement will be formed "[o]nly when a

---

[4] The Court takes no position on what the appropriate standard of review would be in the absence of an evidentiary hearing—which might well hew closer to the standard applied by Georgia state courts.

[5] Ms. Bates's affidavit is referenced in Defendant's Motion but not attached. Instead, it is attached to Defendant Westlake's Combined Motion for Additional Extension of Time (Doc. 9). Nevertheless, in the interest of fairness, and because Plaintiff has not objected, the Court considers Ms. Bates's Affidavit (Doc. 9 at 6–8).

meeting of the minds exists[.]" *Vildibill v. Palmer Johnson of Savannah, Inc.*, 536 S.E.2d 779, 781 (Ga. Ct. App. 2000) (citing *S. Med. Corp. v. Liberty Mut. Ins.*, 454 S.E.2d 180, 182 (1995)). Yet, "the law also favors compromise, and when the parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Id.* (citing *S. Med. Corp.*, 454 S.E.2d at 182).

Plaintiff concedes that he agreed to settle the case. (Doc. 26 ¶ 1) ("[I]t is true that the Plaintiff agreed to a settlement in the above styled case."). He nevertheless opposes the enforcement of the agreement for what the Court construes as two reasons. The Court addresses each in turn.

### 1. Writing Requirement

First, Plaintiff contends the Court should not enforce the settlement agreement because there was no formal written settlement agreement. *See e.g.*, Hr'g Recording at 2:40–41 (Plaintiff: "My first question is: if there was a settlement agreement, why was a settlement agreement not drawn."). While an oral settlement agreement is not categorically unenforceable, *Moreno v. Strickland*, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002), "[i]f the Parties agree that a settlement was reached but disagree as to its terms 'the proponents of the settlement[] must establish its existence in writing'" for that agreement to be enforceable. *Imerys Clays, Inc. v. Wash. Cnty. Bd. of Tax Assessors*, 652 S.E.2d 580, 582 (Ga. Ct. App. 2007) (alteration in original) (quoting *Tekin v. Whiddon*, 504 S.E.2d 722, 724 (Ga. Ct. App. 1998)). Ideally, "[t]he writing which will satisfy this requirement . . . consists of a formal written agreement signed by the parties." *Miller v. Miller*, 846 S.E.2d 429, 434 (Ga. Ct. App. 2020) (quoting *Pourreza v. Teel Appraisals & Advisory, Inc.*, 616 S.E.2d 108, 111 (Ga. Ct. App. 2005)).

Even so, a formal written agreement is not required. *See Moreno*, 567 S.E.2d at 92 (quoting *Brumbelow v. N. Propane Gas Co.*, 308 S.E.2d 544, 547 (Ga. 1983)). Rather, "letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice." *Pourreza*, 616 S.E.2d at 111 (quoting *Herring v. Dunning*, 446 S.E.2d 199, 202 (Ga. Ct. App. 1994)). Particularly relevant here, "[a]n attorney's letter confirming an oral agreement in which one party accepted another party's offer may constitute such a writing[.]" *Moreno*, 567 S.E.2d at 92 (citing *Stacey v. Jones*, 495 S.E.2d 665, 668 (Ga. Ct. App. 1998)). A letter memorializing the parties' oral agreement to settle is sufficient provided that "[t]he essential

5

terms of the agreement [are] clear." *See Pourreza*, 616 S.E.2d at 111 (finding memorializing letter sufficient where the letter memorialized plaintiff's agreement to dismiss lawsuit with prejudice in exchange for defendant's promise not to seek attorney fees).

Here, from the email correspondence submitted by the Parties, the Court finds that Defendant Westlake has met its burden to establish a binding settlement agreement in writing. In May and June 2024, Plaintiff and an attorney for Defendant Westlake, Benjamin Rachelson, negotiated "a settlement to the lawsuit . . . through multiple correspondence." (Doc. 18-1 ¶ 2). In mid-June 2024, Plaintiff "called and emailed" Mr. Rachelson "expressing frustration that he had not received a check despite the fact that he agreed to settle his claims in the lawsuit." (*Id.* ¶ 3). Shortly thereafter, Mr. Rachelson confirmed that the check was en route to Plaintiff, (*id.* ¶ 4), who received the check on June 18, 2024. (*Id.* ¶ 5).

By July 23, 2024, Plaintiff had not filed any dismissal documents. (*See generally* Docs. 1–11). Mr. Rachelson sent an email to Plaintiff enquiring into the status of Plaintiff's claims. (Doc. 18-1 ¶ 8). In relevant part, the email reads:

> Dan — I am following up regarding the status of the claims you have asserted against Westlake Flooring and Principal Life Insurance. As you are aware, you advised upon receipt and clearance of the payment under the Employee Stock Purchase Plan, you would dismiss the pending lawsuit. However, after your receipt and clearance of the ESPP payment, you advised me that while you agreed to dismiss the pending lawsuit, you had "additional grievances" that you intended to assert against Westlake.

(Doc. 18-4 at 4).

Initially, Plaintiff did not respond to Mr. Rachelson's July 23 email. After additional prompting from Alec Sedki, another attorney for Defendant Westlake, Plaintiff sent a response, which, in relevant part, reads:

> ALEC:
>
> AS YOU VERY WELL KNOW, WHAT YOU SENT ME IS REALLY BOGUS. IT DOES NOT SHOW STATE TAXES, FEDERAL TAXES, SOCIAL SECURITY, AND MEDICARE. YOU SIMPLY TOOK THE AMOUNT IN MY ACCOUNT, SUBTRACTED THE 20% THAT I STILL DO NOT KNOW WHERE IT WENT, AND SENT THAT TO ME. THERE WILL BE NO DISMISSAL OF ANYTHING UNTIL THIS IS

6

> PROPERLY DONE AND SINCE THE SETTLEMENT I AGREED TO WAS TO PAY THE STATUTORY REQUIRED PAYMENTS OF SS AND MEDICARE AND THE REMAINDER SENT TO ME NOT WHAT YOU ARE TRYING TO PASS OFF TO ME. YOU KNOW THIS IS NOT RIGHT . . . . THERE WILL BE NO DISMISSAL.

(Doc. 18-4 at 3–4).

As Mr. Rachelson's affidavit makes clear, and Plaintiff does not dispute, at some point between May and June 2024, he and Plaintiff entered into an oral settlement agreement. (*See* Doc. 18-1 ¶ 2); (*see* Doc. 26 ¶ 1). Because Plaintiff disputes the terms of that agreement, Mr. Rachelson's affidavit would not be sufficient alone to establish enforceable terms. *See Imerys Clays*, 652 S.E.2d at 582. Defendant Westlake, however, sent a memorializing email containing the essential terms of the agreement. (*See* Doc. 18-4 at 4). Specifically, that Plaintiff agreed to dismiss the lawsuit in exchange for payment of his claim under the ESPP.

The accuracy of the memorializing email letter is confirmed by Plaintiff's response. Critically, Plaintiff did not dispute that an agreement was formed or that the terms described in Mr. Rachelson's email encapsulated its essential terms. (*See* Doc. 18-4 at 3–4). Instead, Plaintiff objects to Defendant Westlake's *performance* under an agreement he acknowledges existed. (*See id.*) ("THE SETTLEMENT I AGREED TO WAS TO PAY THE STATUTORY REQUIRED PAYMENTS OF SS AND MEDICARE."). Although the Court might not have been willing to accept Mr. Rachelson's email correspondence, without more, as written evidence of an agreement, Plaintiff's written response provides critical context to the letter, and persuades the Court that Mr. Rachelson's email accurately reflects the essential terms of the Parties' oral agreement. As such, the Court finds Defendant Westlake has met its burden to establish the existence of an agreement through a writing—notwithstanding the absence of a formal written agreement.

### 2. Meeting of the Minds

Second, Plaintiff contends that there was no meeting of the minds because the Parties disagreed about the appropriate tax withholding from the settlement amount. *See e.g.*, Hr'g Recording at 2:56–57 (Plaintiff: "The amount that I agreed to accept in a settlement was $15,749.71 not . . . the $13,000 check being issued . . . ."). As noted, there must be a meeting of the minds to create an enforceable contract. *See Vildibill*, 536 S.E.2d at 781. A disagreement

7

about essential terms will, of course, defeat contract formation. *E.g.*, *Miami Heights LT, LLC v. Home Depot USA, Inc.*, 643 S.E.2d 1, 3 (Ga. Ct. App. 2007). By contrast, when the essential elements of a settlement agreement are clear, and the parties disagree about an aspect of performance, the agreement will be enforceable. *See Progressive Mountain Ins. v. Butler*, 875 S.E.2d 422, 427 (Ga. Ct. App. 2022) ("Progressive's failure to tender payment of the settlement amount bears on Progressive's performance of the settlement agreement, not its existence or validity."); *Stacey*, 495 S.E.2d at 668 (failure to comply with demands to forward and release check by a certain date was not grounds for recession).

Here, Defendant Westlake and Plaintiff agreed to settle his claim against Defendant Westlake for the amount of money he claimed was owed to him under the ESPP. (Doc. 18-4 at 4) ("As you are aware, you advised upon receipt and clearance of the ESPP payment, you would dismiss the pending lawsuit."). Neither Party disputes that Plaintiff claimed he was owed $17,054.47 under the ESPP. For example, at the hearing, the Court enquired of Mr. Sedki whether there was an understanding as to the amount to be distributed. *See* Hr'g Recording at 2:15–16. Mr. Sedki responded, "it actually ended up being $17,000 . . . but there was no specific amount discussed it was just the distribution of what was in there." *Id.* Later on in the hearing, Plaintiff confirmed that the ESPP account in question held $17,054.47, and that this was the amount he was owed. Hr'g Recording at 2:44–45 (The Court: "Is it correct as was stated that you all agreed that the account actually had . . . $17,054.47?" Mr. Crumpler "That's correct Your Honor" The Court: "Did you agree that . . . was the amount you were owed?" Mr. Crumpler: "Yes sir, I'm not disputing the $17,054."). As such, the Court finds that the Parties agreed to reciprocal essential terms. Namely, that Defendant Westlake would pay Plaintiff $17,054.47 in exchange for Plaintiff dismissing the lawsuit. Although the Parties vigorously disagree about the appropriate withholding from the $17,054.47, these disagreements are not of the kind which render the agreement unenforceable, but instead bear on the Parties' performance under an enforceable agreement. Accordingly, the Court finds that a meeting of the minds occurred, and the settlement agreement is enforceable as to those essential terms.[6]

---

[6] Defendant Westlake contends that Plaintiff's depositing of the $13,643.58 check is per se evidence that a settlement agreement was formed, and that the amount settled for was $13,643.58. It is indeed

8

**B.     Remedy**

**1.     Legal Framework**

Because the Court has found the existence of an enforceable agreement, the Court turns to the appropriate remedy. As noted, a motion to enforce a settlement agreement is, essentially, an action to specifically enforce a contract. *See Ford*, 928 F.2d at 1122 (quoting *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989)). However, specific performance is only available as a remedy if a court enforces the entire agreement, rather than the obligations of the party opposing the agreement alone. *See EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112, 1124 (11th Cir. 2020) (finding error where district court ordered specific performance of payment under an arbitration agreement without requiring reciprocal performance from the party opposing the agreement).

As other courts in the Eleventh Circuit have found, district courts may enforce a settlement agreement "through a final judgment in Plaintiff's favor for the monies due and owing that have not been paid to date." *See Garcia v. Rambo Sec. Patrol, Inc.*, No. 08-22303-CIV, 2010 WL 750296, at *3 (S.D. Fla. Mar. 3, 2010) (finding that defendant had not paid under an enforceable settlement agreement and entering judgment in favor of the plaintiff for the $1,200 owed); *Joe Hand Promotions, Inc. v. Painter*, No. 4:18-cv-0180, 2019 WL 13533013, at *3 (N.D. Ga. Apr. 22, 2019) (finding that defendant had failed to make installment payments as agreed under a settlement agreement and entering judgment in favor of plaintiff and against defendant in the amount of the missed payments). Effectively, a money judgment to specifically enforce a settlement agreement operates as a consent judgment, through which the specifically enforced settlement agreement becomes the order of the enforcing court. *See Garcia*, 2010 WL 750296, at *3 (citing *Cia Anon*, 374 F.2d at 36 and *Mass. Cas. Ins. v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972)); *Cia Anon*, 374 F.3d at 36 ("[A]n agreement of the parties settling a disputed

---

true that "[t]he delivery and acceptance of a check stating on its face that it constitutes final settlement of a claim, whether the amount of the claim is established or uncertain, amount to an accord and satisfaction which discharges the claim." *E.g.*, *Rabenstein v. Cannizzo*, 534 S.E.2d 847, 848 (Ga. Ct. App. 2000) (citing *Hardigree v. McMichael*, 353 S.E.2d 78, 80 (Ga. Ct. App. 1987)). That situation, however, is readily distinguishable here, because the check Plaintiff accepted and deposited did not state on its face that it constituted final settlement of the claim.

liability is as conclusive of their rights as a judgment would be if it had been litigated instead of compromised." (quoting *J. Kahn & Co. v. Clark*, 178 F.2d 111, 114 (5th Cir. 1949)).[7]

### 2. Performance under the Settlement Agreement

As found above, Plaintiff and Defendant Westlake agreed to settle Plaintiff's claim for the amount that was in Plaintiff's ESPP—$17,054.47. Yet, Plaintiff received only $13,643.58 in a check from Principal Life. (Doc. 18-3 at 2). The Parties disagree about whether the $3,410.89 difference represents appropriate tax withholding. Defendant Westlake's position is that because the reduction is an Internal Revenue Services ("IRS") tax withholding which Principal Life was required to withhold when it dispensed the ESPP funds, the payment of $13,643.58 discharged Defendant Westlake's obligation under the agreement. (Doc. 28 at 2–3). On the other hand, Plaintiff asserts that he agreed only to withholdings of "$1,057.37 in Social Security withholding and $247.29 in Medicare withholding" for a total of $15,749.71 (Doc. 26 ¶ 2).

While Defendant Westlake makes much of Principal Life's IRS obligation, it has little impact on the Court's determination of performance under the settlement agreement. There is no suggestion that Principal Life was, itself, a party to the agreement. (*See e.g.*, Doc. 9 ¶¶ 1–9); (Doc. 18-1 ¶¶ 1–13). Rather, Plaintiff agreed to settle his claim between May and June 2024 with Defendant Westlake. (*Id.* ¶ 2). Plaintiff was then directed to submit distribution paperwork to Principal Life which he did. (Doc. 9 ¶ 5) ("On or about May 8, 2024, Principal Life received the necessary information from Plaintiff to process the distribution of his accrued benefits."). Then, applying its own policies, Principal Life determined that the amount to be distributed was subject to a 20% IRS tax withholding for a total of $13,643.58. (*Id.* ¶ 6). ("Upon receipt of the required information . . . Principal Life processed the distribution in the

---

[7] Other courts have entered an order for a defendant to pay the amount due under a specifically enforced settlement agreement by a certain date and retained jurisdiction over the enforcement of the agreement. *See e.g.*, *Zavala v. Se. Flooring Contractors, Inc.*, No. 6:13-cv-1355, 2014 WL 12873017, at *1–2 (M.D. Fla. July 31, 2024). Then, if the defendant did not pay, the court could impose money damages through a civil contempt sanction. *Id.* However, given that the obligation of a single lump sum payment does not pose any apparent need for ongoing supervision, the Court finds that imposition of a money judgment is appropriate and more efficient. To the extent that Defendant Westlake objects to this remedy, it had ample opportunity to argue for a different approach in its supplemental brief. Instead, Defendant Westlake argues for unilateral enforcement of the settlement agreement against Plaintiff, which adds little.

ordinary course of business and determined that the total distribution owed to Plaintiff was $17,054.47, less $3,410.89 in required withholding for taxes for a total payment of $13,643.58.").

Nothing in the exchange suggests to the Court that Principal Life was a party to the settlement agreement, nor that Principal Life's IRS requirements altered Defendant Westlake's obligation to pay the agreed-upon-amount under the settlement agreement of $17,054.47. Defendant Westlake has pointed to no authority which instructs that a settlement of an ERISA claim may only be for the amount of that claim as it would be paid out in the ordinary course of business. To the contrary, from the Court's experience, it would be typical for litigants to settle a claim for substantially more than the unpaid benefits that would have been dispensed had no litigation occurred, given that, by the time of settlement, a plaintiff has likely assumed additional burdens and costs to enforce the obligation to pay. Indeed, when making the agreement, Plaintiff testified that he expected Defendant Westlake to pay additional money beyond what would be owed by Principal Life under the ESPP. *See* Hr'g Recording at 2:56 (Plaintiff: "Quite frankly Your Honor, I felt like Westlake owed me some more money, not Principal. I mean, as a matter of fact, as far as I'm concerned we can dismiss Principal from this thing.").

Here, Defendant Westlake appears to have allowed Plaintiff to proceed through settlement with an erroneous belief about the money he would ultimately receive as a result of his settlement. (*E.g.*, Doc. 18-4 at 3–4) ("SINCE THE SETTLEMENT I AGREED TO WAS TO PAY THE STATUTORY REQUIRED PAYMENTS OF SS AND MEDICARE AND THE REMAINDER SENT TO ME NOT WHAT YOU ARE TRYING TO PASS OFF TO ME."). Plaintiff, who the Court finds to be credible in this regard, plainly believed that the appropriate withholding was $1,057.37. *See e.g.*, Hr'g Recording at 2:40–41 (Plaintiff: "I informed Mr. Rachelson that I expected the amount that Principal was holding was $17,054.47. . . . The $1,304.66 was what I expected to be held—withheld for a total check to me of $15,749.71 . . . ."); *id.* at 2:42–43 (Plaintiff: "I expressed to Mr. Rachelson, on several occasions, that I expected nothing to be withheld except Social Security and Medicare. Any other taxes I would . . . deal with as a I file my taxes for 2024."). Yet, Defendant Westlake would have known that if Plaintiff submitted a distribution request to Principal Life as

11

instructed, Principal Life would withhold $3,410.89 from Plaintiff's distribution. These divergent expectations did not negate an essential term of the agreement so as to defeat formation. *See Miami Heights*, 643 S.E.2d at 3. But the Court believes that it would be fundamentally inequitable to allow the consequences of this mistake to fall entirely on Plaintiff's shoulders, as Defendant Westlake requests.

This is particularly so because Defendant Westlake, as a represented party, could have avoided the present dispute by executing a formal written settlement agreement. Although such an agreement was not required, *see Moreno*, 567 S.E.2d at 92, Counsel for Defendant Westlake knew or should have known that a formal agreement which explained the IRS withholding would have prevented any meaningful dispute about the terms of the settlement agreement, or any significant debate about whether the agreed-upon withholding was correctly applied to the amount Plaintiff ultimately received. But despite this knowledge, Counsel chose to proceed relying solely on an oral settlement agreement memorialized months after its formation. It appears to the Court upon review that Counsel for Defendant Westlake could well have believed that, by allowing the withholding to remain uncertain, while knowing that more would be withheld than Plaintiff expected, they could effectively reduce the amount Defendant Westlake ultimately paid to Plaintiff without altering the binding nature of the settlement agreement. While, as a matter of law, Defendant Westlake is correct that an enforceable agreement was made, the Court will not use its equitable powers to assist Defendant Westlake in capitalizing on Plaintiff's relative lack of legal sophistication.

Ordinarily, the Court might have dismissed the action and entered judgment in favor of Plaintiff for the difference between the amount of settlement and the amount that was actually given to Plaintiff. However, as noted, Plaintiff concedes that he agreed to some withholding, and it would be likewise inequitable to award Plaintiff more than he believed he was owed. The Court will thus enforce the settlement agreement and dismiss the case, but will enter judgment in favor of Plaintiff so that he is placed in the position that he would have been in had the settlement check been subject to the withholding he expected. Specifically, the Court will enter judgment in Plaintiff's favor in the amount of $2,106.13, because Plaintiff expected to be paid $15,749.71, but received $13,643.58.

### C. Disposition of the Case

Lastly, the Court must address the manner in which Plaintiff's case should be dismissed. Defendant Westlake contends that the Court should dismiss the action, in its entirety, with prejudice. However, this request is somewhat complicated by Plaintiff's Amended Complaint (Doc. 27), filed on October 28, 2024, which asserts additional allegations of disability discrimination against Defendant Westlake. The Court granted Plaintiff leave to amend the initial Complaint (Doc. 1-2) on August 29, 2024——more than two weeks before the instant Motion to Enforce Settlement (Doc. 18) was filed on September 16, 2024.

The Court agrees with Defendant Westlake to the extent that the Court should dismiss the action in its entirety, but the Court does not find that the additional claims asserted in Plaintiff's Amended Complaint were part of the settlement agreement made nearly six months before its filing. Had the Court been aware of the purported settlement agreement at the time it granted leave to amend, it would not have granted that leave. Hence, the Motion to Amend was improvidently granted. The Court will thus enforce the settlement agreement, as the action stood at the time the agreement was made, and will dismiss Plaintiff's initial Complaint (Doc. 1-2) with prejudice. The Court will dismiss all other claims asserted against Defendant Westlake by Plaintiff without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendant Westlake's Motion to Enforce Settlement (Doc. 18) is **GRANTED-IN-PART**. Plaintiff's initial Complaint (Doc. 1-2) is **DISMISSED**, with prejudice. Plaintiff's Amended Complaint (Doc. 27) is **DISMISSED**, without prejudice. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and against Defendant Westlake Services Holding Company in the amount of **$2,106.13**. The Court will retain jurisdiction solely for the purpose of enforcing this Order. Additionally, as the action has been dismissed, Defendant Westlake's Motion to Dismiss Complaint (Doc. 29); and Plaintiff's Motion to Produce Documents (Doc. 33) are **DENIED**, as moot.

**SO ORDERED**, this 13th day of February 2025.

                                               /s/ W. Louis Sands
                                               **W. LOUIS SANDS, SR. JUDGE**
                                               **UNITED STATES DISTRICT COURT**